## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

**DOUGLAS L. DENDINGER**                           **CIVIL ACTION NO.:**

                                                    **JUDGE:**

**Versus**

                                                    **MAGISTRATE:**

**CITY OF BOGALUSA, JOE
CULPEPPER, WALTER P. REED, IN
HIS OFFICIAL CAPACITY AS
DISTRICT ATTORNEY FOR
WASHINGTON PARISH AND IN HIS
PERSONAL CAPACITY, LEIGH
ANNE WALL, JULIE KNIGHT,
PAMELA JEAN LEGENDRE,
RANDY "COUNTRY" SEAL, IN HIS
OFFICIAL CAPACITY AS SHERIFF
OF WASHINGTON PARISH AND IN
HIS PERSONAL CAPACITY, MIKE**          **JURY DEMANDED**
**HALEY, KENDALL BULLEN, CHAD
CASSARD, SCOTT SEALS, STEVEN
GALLOWAY, AND DOE
DEFENDANTS**


## COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND INJUNCTIVE
## RELIEF

NOW INTO COURT, through undersigned counsel, comes Douglas L. Dendinger (hereinafter "Plaintiff" or "Dendinger"), and for his Complaint, alleges as follows:

### THE PARTIES

1.

The defendants herein are:

a.      City of Bogalusa (hereinafter sometimes "City"), a body corporate and political subdivision of the State of Louisiana.  City operates the Bogalusa Police Department.  It is able to sue and be sued in its own name and is a "person" within the meaning of 42 U.S.C. § 1983.

b.      Joe Culpepper (hereinafter sometimes "Culpepper"), a person of the full age of majority and the duly appointed Chief of the Bogalusa Police Department, who resides in the Eastern District of Louisiana, sued in both his individual and official capacities.  Plaintiff is informed and believes and thereon alleges that Defendant Culpepper is, and at all relevant times was, a policy-making official of City and the Bogalusa Police Department.  Defendant Culpepper is, and at all material times was, the individual charged with the duty and granted the authority to render final decisions regarding use policies and practices of the Bogalusa Police Department, including without limitation policies and procedures regarding witness statements given by peace officers employed by the Bogalusa Police Department and issues regarding probable cause for the arrest of criminal suspects.

c.      Walter P. Reed (hereinafter sometimes "Reed") is a person of the full age of majority, serving, at all material times, as the Washington Parish District Attorney for the 22nd Judicial District.  Plaintiff alleges that Defendant Reed is, and at all relevant times was, a policy-making official of Washington Parish, acting under the color of law and within his capacity as an employee, agent, representative, and servant of Washington Parish.  On information and belief, District Attorney Reed either directly participated in the decisions involving the arrest, imprisonment, and prosecution of Plaintiff Dendinger, as more fully set forth below, and/or ratified the actions of co-defendants, including Assistant District Attorney Wall.  Defendant Reed is sued herein in both his official and individual capacities.

d.      Leigh Anne Wall (hereinafter sometimes "Wall") is a person of the full age of majority, employed by the Washington Parish District Attorney's Office as an Assistant District Attorney and who on information and belief resides in Washington Parish and within the Eastern District of Louisiana.  Plaintiff alleges that Defendant Wall is, and at all relevant times was, acting under the color of law and within her capacity as an employee, agent, representative, and servant of Washington Parish.  Defendant Wall is sued herein in her individual capacity.

e.      Julie Knight (hereinafter sometimes "Knight") is a person of the full age of majority, employed by the Washington Parish District Attorney's Office as an Assistant District Attorney and who on information and belief resides in Washington Parish and within the Eastern District of Louisiana.  Plaintiff alleges that Defendant Knight is, and at all relevant times was, acting under the color of law and within her capacity as an employee, agent, representative, and servant of Washington Parish.  Defendant Knight is sued herein in her individual capacity.

f.      Pamela Jean Legendre (hereinafter sometimes "Legendre") is a person of the full age of majority, employed by the Washington Parish as a Staff Attorney for Judge August J. Hand, Franklinton Courthouse, Div. "B", and who on information and belief resides in Washington Parish and within the Eastern District of Louisiana.  Plaintiff alleges that Defendant Legendre is, and at all relevant times was, acting under the color of law and within her capacity as an employee, agent, representative, and servant of Washington Parish.   Defendant Legendre is sued herein in her individual capacity.

g.      Randy "Country Seal" (hereinafter sometimes "Seal"), a person of the full age of majority and the duly appointed as Sheriff for the Washington Parish Sheriff's Office, who resides in the Eastern District of Louisiana, sued in both his official and individual capacities.  Plaintiff is informed and believes and thereon alleges that Defendant Seal is, and at all relevant times was, a policy-making official of the Washington Parish Sheriff's Office.  Defendant Seal is, and at all material times was, the individual charged with the duty and granted the authority to render final decisions regarding policies and practices of the Washington Parish Sheriff's Office, including without limitation policies and procedures regarding probable cause for the arrest of criminal suspects and detention of criminal suspects.

h.      Mike Haley (hereinafter sometimes "Haley"), a person of the full age of majority and the duly appointed as Chief Deputy for the Washington Parish Sheriff's Office, who resides in the Eastern District of Louisiana, sued in both his individual and official capacities.  Plaintiff is informed and believes and thereon alleges that Defendant Haley is, and at all relevant times was, a policy-making official of the Washington Parish Sheriff's Office.  Defendant Haley is, and at all material times was, a policy-making official for the Washington Parish Sheriff's Office who, on information and belief, either directly participated in the decisions involving the arrest of Plaintiff Dendinger, as more fully set forth below, and/or ratified the actions of co-defendants, including without limitation co-defendant Steven Galloway.

i.      Kendall Bullen (hereinafter sometimes "Bullen") is a person of the full age of majority, employed by the Bogalusa Police Department holding the rank and title of "Captain" and who on information and belief resides in Washington Parish and within the Eastern District of Louisiana.  Plaintiff alleges that Defendant Bullen is, and at all relevant times was, a policy-making official of the City and Bogalusa Police Department, acting under the color of law and within his capacity as an employee, agent, representative, and servant of Defendant City.  Defendant Bullen is sued herein in both his individual and official capacities.

j.      Chad Cassard (hereinafter sometimes "Cassard") is a person of the full age of majority, formerly employed by the Bogalusa Police Department holding the rank and title of "Officer" and who on information and belief resides in Washington Parish and within the Eastern District of Louisiana.  Defendant Cassard is sued herein in his individual capacity.

k.      Scott Seals (hereinafter sometimes "Seals") is a person of the full age of majority, employed by the Bogalusa Police Department holding the rank and title of  "Deputy" and who on information and belief resides in Washington Parish and within the Eastern District of Louisiana. Plaintiff alleges that Defendant Seals is, and at all relevant times was, acting under the color of law and within his capacity as an employee, agent, representative, and servant of Defendant City. Defendant Seals is sued herein in both his individual official capacity.

l.      Steven Galloway (hereinafter sometimes "Galloway") is a person of the full age of majority, employed by the Washington Parish Sheriff's Office holding the rank and title of "Deputy" and who on information and belief resides in Washington Parish and within the Eastern District of Louisiana.  Plaintiff alleges that Defendant Galloway is, at all relevant times was, acting under the color of law and within his capacity as an employee, agent, representative, and servant of Defendant/Sheriff Randy "Country" Seal.  Defendant Galloway is sued herein in his individual capacity.

m.      John Does 1 and 2 are persons of the full age of majority, who on information and belief resides in the Eastern District of Louisiana, and whose proper names Plaintiff has been unable to ascertain.  Plaintiff is informed and believes and thereon alleges that John Does 1 & 2 are and were policy-making officials with respect to policies and practices involving the facts herein, including without limitation the protocol used herein in the apprehension and arrest of criminal suspects.  John Does 1 and 2 are sued herein in both their official and individual capacity

n.      Doe Insurance Companies 3 through 5 are, on information and belief, doing business within the Eastern District of Louisiana and whose names Plaintiff has been unable to ascertain.

## JURISDICTION AND VENUE

### 2.

This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 1983. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202. This court has jurisdiction over the state law claims pursuant to Pendent Jurisdiction.

### 3.

Venue is proper in this district and division under 28 U.S.C.A. § 1391(b), because the underlying acts and conduct violating applicable laws and constitutional rights occurred in this district; and/or each defendant conducts its/his/her affairs in, or is an inhabitant of, resides in, or has an agent in this district.

## FACTUAL ALLEGATIONS

### 4.

On April 20, 2011, it is alleged that Logan N. Mills (hereinafter "Mills") was involved with an armed robbery of Capital One Bank, located in Bogalusa, Louisiana.

### 5.

Trial in the above criminal trial commenced on or about August 13, 2012, in the 22d Judicial District for Washington Parish (Case No. 11-CR5113331), Division "B", the Hon. August J. Hand presiding.

### 6.

On or about April 18, 2012, and before commencement of the above criminal trial, Mills had filed an excessive force claim stemming from the above incident of April 20th, 2011. Mr. Mills' lawsuit, under 42 U.S.C. § 1983, was filed in the Eastern District of Louisiana in the case entitled *Logan N. Mills v. City of Bogalusa, etc. et al.* (Case No. 12-cv-0991) (hereinafter sometimes "Excessive Force Suit").

7.

The defendants in the Excessive Force Suit are Joe Culpepper, Chief of Police for the City of Bogalusa, Capt. Kendall Bullen (Bogalusa P.D.), Lieut. Patrick Lyons, Ofc. Scott Seals ("Seals"), and former Ofc. Chad Cassard ("Cassard"). Mills' Excessive Force Suit has been stayed due to Mills' pending criminal appeal.

8.

Pursuant to FRCP Rule 4(m), defendants are to be served with summons and complaint within 120 days after filing the complaint. As the month of August (2012) approached, Officers Seals and Cassard had not yet been served. Mills' counsel in the Excessive Force Suit ("Mills' counsel") was informed that Seals and Cassard were *no* longer employed with the Bogalusa P.D. Further, Plaintiff's counsel was informed that Cassard was now working offshore. The lack of service had been set for Docket Call, in the Excessive Force Suit, for August 22, 2012.

9.

Mills' counsel determined that the best opportunity to locate and serve defendants Seals and Cassard would be at or near the courthouse, since Officers Seals and Cassard would be testifying at the criminal trial. However, when the regular process server was contacted for this purpose, Mills' counsel was informed that they were overloaded at that time and were unavailable.

10.

Mills' counsel asked that Melanie Mills, the mother of Logan Mills, who was attending the criminal trial, act as a process server and hand an envelope containing summons and complaint to both Seals and Cassard.

11.

Pursuant to the above instructions, Melanie Mills handed an envelope to Seals in the hallway of the courthouse.

12.

On information and belief, Seals brought the service of process to the attention of Assistant District Attorney trying the Mills' criminal case, Leigh Anne Wall.  Further, on information and belief, Wall, in turn, advised and complained to Judge Hand of the service upon Seals.

**Stay-Away Order Re: Witnesses Under Subpoena**

13.

As a result, Plaintiff is informed and believes and thereon alleges that Judge Hand ordered that Melanie Mills stay away from witnesses under subpoena during the trial.

14.

In view of Judge Hand's order, Mills' counsel instructed Melanie Mills not to serve Cassard during trial.  In addition, Mills' counsel notified the Case Manager (Section "C") in the Excessive Force Suit that he was in the process of serving the remaining defendants.  The Docket Call was passed for an additional thirty days.

15.

The criminal trial concluded on Monday afternoon, August 20, 2012.  The jury returned a verdict, after which the jury was excused.  With the jury having reached a verdict and having been excused, Plaintiff alleges, any and all witnesses that had been under subpoena for the Mills' trial, including without limitation Defendant Cassard, had been discharged prior to the time Cassard was served with process by Plaintiff outside the Washington Parish Courthouse, as more fully set forth below.  Accordingly, Plaintiff alleges, no witness was under subpoena after the conclusion of trial, and Judge Hand's Stay-Away Order had dissolved.

16.

With the criminal trial completed, Mills' counsel instructed another individual (*not* Melanie Mills) to act as a process server in the Excessive Force Suit.  Because, on information and belief, Cassard was no longer employed by and/or under the control of the Bogalusa P.D. and was working offshore, Mills' counsel instructed that Cassard be served *after* the criminal trial, but before he left the vicinity of the courthouse.

17.

Pursuant to these instructions, Mills' process server, Plaintiff Dendinger, stood outside the courthouse and delivered the summons and complaint to Cassard, who had departed the courtroom after the verdict came in and who was standing on the courthouse steps.  Standing nearby were, among others, defendants Chief Joe Culpepper, Capt. Kendall Bullen, Scott Seals, Assistant District Attorney Leigh Anne Wall, Assistant District Attorney Julie Knight, and Pamela Jean Legendre.

18.

On information and belief, after being served, Cassard called out to Ms. Wall.  Further, plaintiff alleges, Capt. Bullen yelled at Plaintiff and threw the envelope (containing summons and complaint) at Plaintiff.  The envelope landing on the wet pavement (it was raining) several feet from Plaintiff.

19.

After the above occurred, Mills' counsel received a telephone call from Defendant Legendre, Staff Attorney for Judge Hand.  Among other things, using profanity, Ms. Legendre made the accusations that there had been an "assault on a police officer" and "intimidation of a witness." Legendre also advised that "they" were considering filing a complaint with the Louisiana State Bar against Mills' counsel.

20.

Mills' counsel responded by, among other things, assuring Legendre that there was no intent to intimidate witnesses.  The only objective was service of process.  Mills' counsel offered to speak to anyone, including Judge Hand, to explain why Cassard had been served in this manner.  The telephone conversation was concluded.  No one called back from the Judge's chambers.

## Arrest/Imprisonment of Plaintiff Dendinger

21.

Soon after the above telephone conversation, Mills' counsel learned of a further development.  Plaintiff Dendinger, who had served Mr. Cassard at the courthouse, was placed under arrest at Plaintiff's home.   The arresting officer was Washington Parish Deputy Steven Galloway.

22.

Plaintiff is informed and believes and alleges that, prior to his arrest, Defendants/Assistant District Attorneys Wall and Knight had contacted Defendant/District Attorney Walter Reed, after which Reed authorized the arrest of Plaintiff.  Plaintiff is further informed and believes, and thereon alleges, that, prior to Plaintiff's arrest, Defendant/Washington Parish Sheriff Seal had been contacted by either Defendant Wall and/or Reed about the plan to arrest Mills' process server, Plaintiff Dendinger.  Further, Plaintiff is informed, believes, and thereon alleges that Sheriff Seal authorized Defendant/Chief Deputy Haley to order Defendant/Deputy Steven Galloway to put Plaintiff under arrest.

23.

Plaintiff is further informed and believes, and thereon alleges, that, in addition to giving Witness Statements, Defendants Wall and Knight gave legal advice to Sheriff Seal, Chief Deputy Haley, and arresting officer (Steven Galloway) that the Washington Parish Sheriff's Office had probable cause to arrest Plaintiff Dendinger, as more fully set forth below.

24.

After his arrest, Dendinger was taken to the Washington Parish Jail.  On information and belief, as the process server was led toward the Booking Room, Defendants Leigh Anne Wall, Julie Knight, Pamela Jean Legendre, Capt. Bullen, Chief Joe Culpepper, and Patrick Lyons, among others, were in the corridor of the Washington Parish Jail to "greet" Plaintiff.  On information and belief, Plaintiff alleges that, as he walked by, Chief Culpepper whistled the theme from Clint Eastwood's "The Good, The Bad & The Ugly", winked, and laughed.  The Assistant District Attorneys, Ms. Wall and Ms. Knight, on information and belief, joined in on the "fun" and laughed at Plaintiff, as well.  Dendinger was kept in handcuffs, which were secured to a rail, for approximately three (3) hours.

25.

Dendinger was, subsequently, released after posting bail.

**Plaintiff's Discovery of The Filing of a Bill of Information, Ineffective Service Re:**
**Arraignment, No-Bond Attachment Order, and Defendants' Witness Statements**

26.

Plaintiff alleges that it was not until his Arraignment, on February 12, 2014, when Plaintiff received the discovery package and discovered, among other things, that Wall (in addition to other witnesses) had prepared a Witness Statement regarding Plaintiff's service of process upon Defendant Cassard, as more fully set forth below.  Plaintiff alleges that Wall made the false statement, among other statements, in her Witness Statement that Mr. Dendinger was "a man who had been in the courtroom all day" (for the Mills' criminal trial).   This statement was false.  Plaintiff had never been inside the courtroom or courthouse that day or any other day of the Mills' trial.

27.

Not until approximately one (1) year after Plaintiff was arrested, on or about August 15, 2013, was a Bill of Information filed by the Washington Parish District Attorney against Mr. Dendinger.  The Bill charged Mr. Dendinger with the following criminal offenses:  1) Obstruction of Justice (Felony – La R.S. § 14:130.1); 2) Intimidation of a Witness (Felony – La R.S. § 14:129.1); and 3) Battery of a Police Officer (Misdemeanor – La R.S. § 14.33), filed in the 22d Judicial District, Case No. 13-CR9-122594.  Plaintiff Dendinger, however, did not discover the filing of the Bill of Information until approximately five (5) months later, on or about January 13, 2014, as more fully set forth below.

28.

On or about September 16, 2013, approximately one (1) month after the above Bill of Information was filed, Dendinger is informed and believes that an Arraignment had been set for hearing.  Dendinger, however, had been given *no* notice of the Arraignment.  Instead, Dendinger is informed and believes, Defendant Wall attempted to serve Dendinger's Bondsman (despite knowing Dendinger's home address) with notice of the Arraignment.  Dendinger is further informed and believes that the notice to his Bondsman was returned to Wall (because the Bondsman had moved).

29.

Despite Walls' knowledge that Plaintiff had not been given notice, Plaintiff alleges that Wall went forward with the September 16, 2013, Arraignment and, on information and belief, Wall either gave false testimony to the court and/or concealed the true facts about the non-service of notice of hearing upon Plaintiff.  Accordingly, on or about September 16, 2013, a No Bond Attachment Order was issued for the arrest of Plaintiff.

30.

When, on or about January 13, 2014, Plaintiff first learned of the No Bond Attachment Order, a Public Defender called on behalf of Plaintiff to Wall's Office about the lack of notice. Plaintiff is informed and believes and thereon alleges that Wall's assistant acknowledged the "bad service", but also stated that the District Attorney would *not* recall the Attachment.  Eventually, however, the criminal court recalled the Attachment and set an Arraignment for February 12, 2014.

31.

Plaintiff alleges that his Arraignment went forward on February 12, 2014.  At Plaintiff's Arraignment, Pre-Trial was scheduled for June 16, 2014, and Trial was set for August 4, 2014.

**<u>Witness Statements:  Fabricated Evidence/Perjurious Testimony</u>**

32.

Again, Plaintiff alleges that it was not until February 12, 2014, that Plaintiff had knowledge of i) who provided Witness Statements prior to his arrest; and ii) what purported facts were contained in the Witness Statements.

33.

Plaintiff Dendinger alleges that the Witness Statements were false in at least the following respects:

i)      <u>Leigh Anne Wall</u> – Defendant Wall's stated, among other things, that Plaintiff was "a man who had been the courtroom all day . . . ."  Plaintiff alleges that this statement was false. Plaintiff was never in the courtroom during the Mills' trial;

ii)    <u>Pamela Jean Legendre</u> – Defendant Legendre stated, among other things, that Chad Cassard had been "slapped" with an envelope that "made such a noise I thought Chad had been punched . . . ."  Legendre further stated, in her Witness Statement, that, since Cassard was a "reserve officer", Cassard was "clearly" the victim of a "battery on a police officer . . . ."  Legendre further stated that, because the criminal matter in Judge Hand's courtroom (Mills' criminal trial) was "not over" (due to "sentencing", "post-trial motions", etc.), Plaintiff was guilty of "intimidating" a "witness."  Legendre further testified that Mills' "mother handed the papers to the guy in the pink shirt [Plaintiff]."  Plaintiff alleges that these statements were, all, false.  The envelope was placed in Cassard's hands.  Cassard was never slapped.  The trial had concluded, and the jury and witnesses (including Cassard) had been discharged.  Cassard was no longer "under subpoena."  Melanie Mills had not handed the envelope to Plaintiff;

iii)    <u>Julie Knight</u> – Defendant Knight stated that Cassard had been "hit" with Plaintiff's "hand" and "this was done in a manner to threaten and intimidate everyone involved;"

iv)    <u>Joe Culpepper</u> – Defendant Culpepper stated he "observed a w/m wearing a pink long sleeve shirt slop [sic] Chad Cassard in the chest w/ an envelope."  However, in a deposition taken of Chief Joe Culpepper on or about February 24, 2014, Culpepper testified that his attention "was focused elsewhere" and that he did <u>*not*</u> observe the process server actually put the envelope onto Mr. Cassard;

v)    <u>Kendall Bullen</u> – Defendant Bullen stated Plaintiff "hit Officer Chad Cassard in the chest area with a Packet of Papers . . . " and that he did so with "force";

vi)    <u>Scott Seals</u> – Defendant Seals stated Plaintiff had "hit Chad Cassard in the chest with a bundle of papers . . . ;" and

vii)    <u>Chad Cassard</u> – Defendant Cassard stated that he had been "slapped" in the chest by Plaintiff.

**Recusal of District Attorney Walter Reed/Assignment of Attorney General/Refusal of Charges by Attorney General – Favorable Termination in Plaintiff's Favor**

34.

Plaintiff alleges that, only after the insistence of Plaintiff's criminal counsel, District Attorney Walter P. Reed, ultimately, relented and agreed to recuse his Office from prosecuting the criminal case filed against Plaintiff, entitled *State of Louisiana v. Douglas L. Dendinger* (22d Judicial District, Court Docket Number: 13-CR9-122594). Plaintiff is informed and believes that District Attorney Walter P. Reed filed a Motion to Recuse on or about March 2014, which motion was granted. Although the District Attorney's Motion to Recuse refers to the "fair administration of justice" and "to avoid conflict through the appearance of any impropriety", Plaintiff contends that the fundamental conflict (but not, specifically, stated) was the fact that two Assistant District Attorneys (Wall and Knight) had acted as witnesses (above) whose testimony led to the arrest, imprisonment, and prosecution of Plaintiff.

35.

As a result of the recusal, the Office of Walter Reed was replaced by the Attorney General for the State of Louisiana.

36.

Several months later, however, on or about May 29, 2014, the Attorney General abandoned the prosecution of the case. In a letter bearing the date of May 29, 2014, from the State of Louisiana, Department of Justice, it states: "Please allow this letter to serve as formal notification that the charges in this case, Item Number 13-CR9-1222594, Date of Arrest 8/20/2012 have been refused by my office."

37.

Plaintiff is informed and believes and thereon alleges that the above letter from the Attorney General was filed into the Record (Item Number 13-CR9-1222594) on or about June 9, 2014.

38.

Prior to and leading up to the termination of the above criminal proceeding, Plaintiff alleges that he was facing a jail sentence of over fifty (50) years, under La R.S. §§ 14:129.1 (Intimidation of a Witness) and 14:130.1 (Obstruction of Justice), because these statutes provide for sentences that correlate to the underlying crime that was the subject of the Logan Mills' criminal trial.

### COUNT I – VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
### (Fourth and Fourteenth Amendments – False Arrest & False Imprisonment)

39.

Plaintiff repeats, re-alleges, and incorporates by reference all of the preceding allegations of this Complaint.

40.

Plaintiff alleges that he possessed the right, guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution, to be free from unreasonable seizures and false arrests.  Plaintiff further alleges that Defendants herein had knowledge of the above rights under the Constitution.

41.

Plaintiff alleges that, at all material times, he was acting as a process server and was in the act of serving a summons and complaint upon Defendant Cassard and no more.  Plaintiff alleges that there was no probable cause to arrest him and no factual and/or legal justification for his arrest. With respect to Defendants Sheriff Seal, Chief Deputy Mike Haley, and Deputy Galloway, Plaintiff alleges that they, and each of them, lacked sufficient knowledge that would warrant a prudent person's belief that Plaintiff had committed a crime:  There were no facts, among other facts, demonstrating that Plaintiff had any knowledge of Judge Hand's Stay-Away Order ("Order").  There were no facts demonstrating that Plaintiff was subject to the Order.  Indeed, there was no evidence of the Order, itself.  Further, despite the statements about significant force applied by Plaintiff to Cassard's chest, there was no physical evidence (such as a bruise or mark of any kind) on Cassard's body that would have backed up those statements and that would have evidenced the alleged battery. Moreover, Plaintiff is informed and believes, there were cameras in the vicinity of the Washington Parish Courthouse and the Courthouse steps.  Despite the fact that video camera may be the first place a peace officer and/or district attorney would go for evidence of an alleged crime, there is no evidence that any defendant herein, including without limitation Chief Joe Culpepper, Walter Reed, Sheriff Seal, Chief Deputy Haley, Deputy Galloway, Leigh Anne Wall, and/or Julie Knight ever bothered to obtain film from video camera at the Courthouse.  There is no evidence that any defendant made any effort to locate and secure hard, corroborating evidence of Plaintiff's alleged crime.

42.

The actions taken by Defendants, and each of them, were not objectively reasonable in light of the legal rules clearly established at the time, as more fully set forth below.  Further, on information and belief, Plaintiff alleges that Defendant District Attorney Reed was involved in the decision to arrest Mr. Dendinger and/or approved, ratified, and acquiesced in the false arrest of Plaintiff Dendinger.

43.

Plaintiff alleges that Witness Statements submitted by Leigh Anne Wall, Julie Knight, Pamela Jean Legendre, Chief Joe Culpepper, Kendall Bullen, Chad Cassard, and Scott Seals were, all, false and contain fabrications about, among other things, the alleged use of force by Dendinger while serving Cassard, the false allegation that Plaintiff had been present in the courtroom during the Mills' trial, the false allegation that trial had not concluded, the false allegation that Cassard was still a trial witness under subpoena, and the false allegation that Melanie Mills had "handed the papers" to Plaintiff just prior to serving Cassard.

44.

There are also serious discrepancies in the Witness Statements.  In his Witness Statement, Chief Culpepper claims that he observed Dendinger "slop" [sic] Cassard with the envelope (containing the service documents).  However, in a deposition given by Chief Culpepper in February 2014 in the matter herein, Culpepper testified that he was inside the Courthouse speaking to a judge at the time and did *not* witness the service of process.  Plaintiff Dendinger alleges that Chief Culpepper's deposition testimony about his not witnessing Dendinger's service is correct, which means that Chief Culpepper gave a false Witness Statement.

45.

Defendants, and each of them, without just and legal cause, violated Plaintiff Dendinger's clearly established rights under the laws and Constitution of the United States.  Plaintiff was falsely arrested, imprisoned, and, thereafter, prosecuted as a result.

46.

As a direct and proximate result of the aforementioned acts, Plaintiff Dendinger has suffered general, special, and economic damages, including without limitation pain and suffering, mental anguish, and loss of enjoyment of life in an amount according to proof.

## COUNT II – VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983

### (Fourth, Fifth, and Fourteenth Amendments – Procedural Due Process Violations)

47.

Plaintiff repeats, re-alleges, and incorporates by reference all of the preceding allegations of this Complaint.

48.

Plaintiff alleges that he possessed the right, guaranteed by the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution, to be free from unreasonable searches and seizures, that no Warrants shall be issued without probable cause, and that he not be deprived of life, liberty, or property without due process of law.  Plaintiff further alleges that Defendants Wall and Reed, among others, had knowledge of the above rights under the Constitution.

49.

Plaintiff alleges that Defendants Wall and Reed, among others, violated Plaintiff's rights when the Bill Of Information, which had no basis in law or fact, was filed.  Plaintiff Dendinger further alleges that his Constitutional due process rights were violated when he was given no notice of the first Arraignment hearing of September 16, 2013.  In addition, Dendinger alleges that his due process rights were further violated when Defendants, knowing that Dendinger had not appeared at the first Arraignment of September 16, 2013, because he had not been served, allowed the criminal court to issue a No Bond Attachment Order.

50.

Defendants Wall and Reed, without just and legal cause, violated Plaintiff Dendinger's clearly established rights under the laws and Constitution of the United States.  Plaintiff alleges that the Bill of Information contains false and fabricated charges.  Plaintiff ought to have been given proper notice of his first Arraignment.  He was not.  Knowing why Plaintiff had not appeared at the first Arraignment, it was improper (and malicious) for Defendants Wall and Reed to allow the court to issue a No Bond Attachment Order.

51.

As a direct and proximate result of the aforementioned acts, Plaintiff has suffered general, special, and economic damages, including without limitation pain and suffering, mental anguish, and loss of enjoyment of life in an amount according to proof.

**COUNT III – MONELL MUNICIPAL VIOLATONS UNDER 42 U.S.C. § 1983**

**(Against District Attorney Walter Reed, in his Official Capacity)**

52.

Plaintiff repeats, re-alleges, and incorporates by reference all of the preceding allegations of this Complaint.

53.

Plaintiff is informed and believes and thereon alleges that District Attorney Reed, in his official capacity, manifests a deliberate indifference to the violation of constitutional rights of the residents of Washington Parish, including Plaintiff herein.  This deliberate indifference is manifested by the failure to change, correct, revoke, or rescind policies, procedures, and customs, in light of prior knowledge by said defendant, and other policymakers, of indistinguishably similar incidents to residents of Washington Parish.  Plaintiff alleges that it is the policy, practice, and custom of defendant to ignore civil rights, including without limitation the right to be free from unlawful arrest, imprisonment, and the right to be free from abuses of process/malicious prosecution.

54.

As a direct and proximate result of the aforementioned acts, systematic deficiencies, policies, procedures, customs and practices of the above defendants, including Defendant Walter Reed, Plaintiff was wrongfully arrested, imprisoned, and was the victim of abuses of process, causing serious injuries to Plaintiff.

55.

Plaintiff alleges that Defendant Reed has policies, procedures, customs, and practices which violate the constitutional rights of residents and which manifest a deliberate indifference to the civil rights of members of the public by, among other things:

a.      Failing to adequately train Assistant District Attorneys and Staff in proper procedures consistent with the Fourth and Fourteenth Amendments of the United States Constitution;

b.      Condoning and participating in the fabrication of evidence and the withholding of exculpatory evidence by Assistant District Attorneys;

c.      Sanctioning, condoning, and approving the policy of arresting members of the public without probable cause or reasonable suspicion; and

d.      Sanctioning, condoning and approving a department-wide culture of prosecution at all costs (promoting the neighboring Parish of St. Tammany as "St. Slammany"), a euphemism for dishonesty by Assistant District Attorneys and the knowing violation of citizens' Civil Rights.

56.

The customs, policies and practices of the above defendants, and each of them, caused the constitutional injuries to Plaintiff herein.

**COUNT IV – MONELL MUNICIPAL VIOLATONS UNDER 42 U.S.C. § 1983**

**(Against Sheriff Randy Seal, in his Official Capacity as Sheriff for the Washington Parish Sheriff's Office)**

57.

Plaintiff repeats, re-alleges, and incorporates by reference all of the preceding allegations of this Complaint.

58.

Plaintiff is informed and believes and thereon alleges that Washington Parish Sheriff Seal manifests a deliberate indifference to the violation of constitutional rights of his residents, including Plaintiff herein.  This deliberate indifference is manifested by the failure to change, correct, revoke, or rescind policies, procedures, and customs, in light of prior knowledge by said defendants, and its policymakers, of indistinguishably similar incidents to residents of these defendants.  Plaintiff alleges that it is the policy, practice, and custom of defendants to ignore civil rights, including without limitation the right to be free from unlawful seizure and the right to be free from false imprisonment.

59.

As a direct and proximate result of the aforementioned acts, systematic deficiencies, policies, procedures, customs and practices of the above defendants, including Defendant Sheriff Seal, Plaintiff was wrongfully arrested and imprisoned, causing serious, permanent injuries.

60.

Plaintiff alleges that Defendant Seal has policies, procedures, customs, and practices which violate the constitutional rights of residents and which manifest a deliberate indifference to the civil rights of members of the public by, among other things:

a.      Failing to adequately train officers and Commanders in the proper supervision, command and control of police officers, and failing to train in proper police procedures within the Fourth and Fourteenth Amendments of the United States Constitution;

b.      Failing to adequately train officers and Commanders in proper police tactics to prevent false arrests, fabrication of probable cause, and in making false affidavits;

c.      Failing to adequately train officers and Commanders in proper police practices and procedures for detentions and arrest;

d.      Failing to train police officers and Commanders to prevent false arrests and falsification of charges against persons who have not committed any crime or public offense;

e.      Covering up acts of misconduct, including, but not limited to, false arrest and/or dishonesty by its officers and thereby conveying to them its approval and/or lack of concern about police misconduct;

f.      Refusing to discipline adequately individual officers and employees found to have committed similar acts of abuse and misconduct; and

g.      Condoning and participating in the practice of making false arrests and falsely imprisoning arrestees.

61.

The customs, policies and practices of the above defendants, and each of them, caused the constitutional injuries to Plaintiff herein.

**No Qualified Immunity**

62.

At the time of the above uses of force, the contours of the law concerning, among other things, the First, Fourth, and Fourteenth Amendments of the United States Constitution, and rules concerning Service of Process, were clearly established.

63.

Plaintiff further alleges that, at the time defendants, which conduct Plaintiff is informed and believes was either willful or done with deliberate indifference to Plaintiff's rights, such conduct was not objectively reasonable, and a reasonable official in those circumstances would understand that what he/she was doing violated the law. Specifically, Plaintiff alleges that, because of those facts set forth hereinabove, including without limitation the fact that the jury had been discharged at the Mills' criminal trial and that Cassard and other witnesses had been discharged and were no longer under subpoena as trial witnesses, there could be no crime of obstruction of justice and/or intimidation of a witness and probable cause to arrest and justification for Plaintiff's imprisonment and criminal prosecution. Further, on information and belief, Mr. Cassard was no longer a peace officer at the time he was served. Accordingly, the offense of assault on a peace officer could not, legally, be brought. Plaintiff alleges that these facts were clear to defendants, and each of them, at the time Plaintiff was arrested.

**No Absolute Immunity For District Attorney Reed and Assistant District Attorneys Wall and Knight – Functionality Test**

64.

Plaintiff alleges that the actions of District Attorney Reed and Assistant District Attorneys Wall and Knight are not protected by the doctrine of absolute immunity.  First, Plaintiff is informed and believes and thereon alleges that Assistant District Attorneys Wall and Knight, both, provided Witness Statements.  Plaintiff is further informed and believes and thereon alleges that Wall and Knight gave advice to the Washington Parish Sheriff's Office, including without limitation Sheriff Seal, Deputy Chief Deputy Haley, and arresting officer, Steven Galloway, on probable cause to arrest Plaintiff.   Plaintiff is further informed and believes and thereon alleges that either District Attorney Reed participated in the decision to have Wall and Knight provide their own Witness Statements and/or ratified this decision.  In addition, Plaintiff is informed and believes, District Attorney Reed either participated in the decision to advise the Washington Parish Sheriff's Office on probable cause to arrest and/or ratified the actions of Wall and Knight.  Accordingly, Plaintiff alleges, by doing the above, Reed, Wall, and Knight were acting outside the normal function of a district attorney and, therefore, are not absolutely immune.

65.

As a direct and result of defendants' conduct as alleged above, Plaintiff is entitled to declaratory relief, general, special, and economic damages, including without limitation damages for pain and suffering, mental anguish, loss of enjoyment of life, punitive damages, attorney's fees, and costs, as more fully set forth below.

66.

Plaintiff is entitled to attorney's fees pursuant to 42 U.S.C. § 1988.

**Punitive Damages**

67.

Plaintiff is further informed and believes and thereon alleges that the above-described acts of defendants depriving Plaintiff of his constitutionally protected rights, privileges and immunities were done with evil motive or intent, or with reckless or callous indifference to Plaintiff's rights. Accordingly, plaintiff seeks an award of punitive damages against the individual defendants in an amount according to proof.

## COUNT V – LOUISIANA STATE LAW CLAIM FOR MALICIOUS PROSECUTION

68.

Plaintiff repeats, re-alleges, and incorporates by reference all of the preceding allegations of this Complaint.

69.

The above named defendants are jointly, severally and in solido liable to Plaintiff for the Louisiana State tort of malicious prosecution, as more fully set forth above.

70.

As more fully set forth herein, Plaintiff alleges that defendants' actions, as more fully set forth herein, involved the following:

(i)     the commencement or continuance of an original criminal proceeding [*State of Louisiana v. Douglas L. Dendinger* (22d Judicial District, Court Docket Number:  13-CR9-122594)];

(ii)    its legal causation by the present defendants against Plaintiff who was the defendant in the original proceeding;

(iii)   its bona fide termination in favor of the present Plaintiff;

(iv)    the absence of probable cause for such proceeding;

(v)     the presence of malice therein; and

(vi)    damage conforming to legal standards resulting to plaintiff.

71.

Plaintiff alleges that defendants, and each of them, are liable for malicious prosecution.

72.

As a direct and proximate cause of the above, Plaintiff sustained injuries, including without limitation physical injury and, among other things, extreme anguish, humiliation, and embarrassment, all of which entitles Plaintiff to damages as more fully set forth below.

**COUNT VI – LOUISIANA STATE LAW CLAIM FOR ABUSE OF PROCESS**

73.

Plaintiff repeats, re-alleges, and incorporates by reference all of the preceding allegations of this Complaint.

74.

The above named defendants are jointly, severally and in solido liable to Plaintiff for the Louisiana State tort of abuse of process, as more fully set forth above.

75.

As more fully set forth herein, Plaintiff alleges that defendants' actions, as more fully set forth herein, involved the following:

(i)      ulterior purpose, i.e., defendants were acting for a specific purpose not authorized by law; and

(ii)     defendants failed to comply with the proper procedures or rules set out by law for conducting official actions.

76.

Plaintiff alleges that defendants, and each of them, are liable for abuse of process. Specifically, Plaintiff alleges that, from the beginning, Assistant Attorneys Wall and Knight were not giving Witness Statements in order to report a crime.  Rather, Plaintiff alleges, it was their intent, as well as that of co-defendants, to construct a fallacious case against Plaintiff.  After filing the Bill of

Information, Plaintiff alleges that Defendants Reed and Wall continued to abuse process by, intentionally, giving bad (therefore, no) notice to Plaintiff of his Arraignment and, then, seizing on Plaintiff's non-appearance (which they knew would occur) to obtain a No Bond Attachment Order. Plaintiff alleges that, in doing the above, Defendants Wall and Reed committed a fraud on the court and abused its process to the detriment of Plaintiff.

77.

As a direct and proximate cause of the above, Plaintiff sustained injuries, including without limitation physical injury and, among other things, extreme anguish, humiliation, and embarrassment, all of which entitles Plaintiff to damages as more fully set forth below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment in his favor and against defendants, jointly and severally, as follows:

1.    For a declaration that defendants' conduct deprived Plaintiff of his rights, privileges, and immunities secured by the Constitution of the United States;

2.    For an injunction, prohibiting in the future defendants' illegal acts and misconduct complained of herein;

3.    For compensatory general, special, and economic damages in an amount according to proof;

4.    For damages incurred to Plaintiff for his injuries, including without limitation physical and emotional pain and suffering, mental anguish, and loss of enjoyment of life;

5.    For punitive damages;

6.    For attorneys' fees in accordance with any and all statutes and laws, including without limitation those attorneys' fees pursuant to 42 U.S.C. § 1988;

7.      For costs incurred herein; and

8.      For such other and further relief as this court may deem just and proper.


                                        **RESPECTFULLY SUBMITTED BY:**


                                        s/ Philip J. Kaplan_____
                                        **Philip J. Kaplan (LA State Bar # 14415)**
                                        **LAW OFFICES OF PHILIP J. KAPLAN**
                                        3278 Wilshire Blvd., Suite 106
                                        Los Angeles, CA 90010
                                        Phone:  (213) 480-8981
                                        Fax:      (213) 480-8941
                                        Email:  philipkaplan@ca.rr.com

                                        *Attorney for Plaintiff*
                                        *Douglas L. Dendinger*


## DEMAND FOR JURY TRIAL

        Plaintiff hereby demands a jury trial in this action pursuant to Federal Rules of Civil

Procedure, Rule 38.

                                        **RESPECTFULLY SUBMITTED BY:**

                                        s/ Philip J. Kaplan_____
                                        **Philip J. Kaplan (LA State Bar # 14415)**
                                        **LAW OFFICES OF PHILIP J. KAPLAN**
                                        3278 Wilshire Blvd., Suite 106
                                        Los Angeles, CA 90010
                                        Phone:  (213) 480-8981
                                        Fax:      (213) 480-8941
                                        Email:  philipkaplan@ca.rr.com

                                        *Attorney for Plaintiff*
                                        *Douglas L. Dendinger*